UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| ARELI THOMAS,<br><br>            Plaintiff,<br><br>v.<br><br>WEBER STATE UNIVERSITY,<br><br>            Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL (DOC. NO. 74)**<br><br>Case No. 1:20-cv-00054<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Daphne A. Oberg |

Plaintiff Areli Thomas brought this action against Weber State University ("WSU"), for violation of Title IX of the Education Amendments of 1972.[1] Ms. Thomas, a former student at WSU, alleges Professor Todd Baird sexually harassed her during private counseling sessions.[2] Ms. Thomas filed a motion to compel WSU to produce documents and provide full and complete interrogatory responses.[3] Ms. Thomas argues WSU's responses to Interrogatory 1 and Requests for Production ("RFP") 1 through 8 are incomplete and WSU has no justification or basis to withhold the requested documents.[4] Shortly after Ms. Thomas filed her motion, the parties were

---

[1] (*See* Am. Compl., Doc. No. 50); *see also* 20 U.S.C. §§ 1681–1688.

[2] (*See* Am. Compl. ¶¶ 9–13, Doc. No. 50.)

[3] (Pl.'s Short Form Statement of Disc. Issues and Mot. to Compel Disc. of Defendant ("Mot."), Doc. No. 74.)

[4] (*Id.* at 2.)

1

ordered to file supplemental briefing.[5]  For the reasons stated at the hearing on November 8, 2022,[6] and explained below, the motion is granted in part and denied in part.

### Timeliness

As an initial matter, WSU argues the motion is untimely.  WSU contends the motion was filed ninety-two days after Ms. Thomas's first communication with WSU regarding deficiencies in its discovery responses, violating the forty-five-day filing period in Rule 37 of this district's Local Rules of Civil Practice.[7]  Ms. Thomas did not address timeliness in her motion or supplemental briefing but, at the hearing, argued the motion is timely because the parties had ongoing communication and supplemental discovery productions during the intervening ninety-two days.  She contends her motion was timely filed on October 13, 2022, where she communicated her outstanding discovery disputes to WSU on October 3, 2022.[8]

District courts have discretion "in deciding whether a motion is too tardy to be considered."[9]  There is no doubt the parties' communications regarding the discovery disputes were not as meaningful as contemplated by the local rules.  But the record shows the parties engaged in a meeting and conferral, supplemental production, and ongoing communication

---

[5] (*See* Doc. No. 75.)

[6] (*See* Doc. No. 83.)

[7] (Def.'s Resp. to Ms. Thomas' Suppl. Statement of Disc. Issues and Mot. to Compel ("Opp'n") 1–3, Doc. No. 81); *see also* DUCivR 37-1 (requiring any short-form discovery motion to be filed no later than forty-five days after prompt written communication with opposing counsel).

[8] (*See* Ex. A to Mot., Oct. 3 Letter, Doc. No. 74-1.)

[9] *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012).

regarding the discovery disputes. In light of this ongoing process, Ms. Thomas's motion will not be denied as untimely.[10]

**Interrogatory 1**

Interrogatory 1 asks WSU to "identify all complaints made against Dr. Baird regarding sexual harassment, including the name of the complain[a]nt, the date and the outcome of any complaint made."[11] Ms. Thomas contends WSU "unilaterally narrows the definition of complaint to mean formal complaints of sexual harassment."[12] Ms. Thomas argues this request encompasses both formal and informal complaints—and should have elicited more information than WSU provided.[13] WSU contends it has taken extensive steps to respond to Interrogatory 1.[14] At the hearing, WSU indicated it has identified and turned over all responsive information, including informal complaints. WSU also argued it produced the information sought in response to other discovery requests. However, WSU conceded it did not supplement its interrogatory responses as required under Rule 33 of the Federal Rules of Civil Procedure.[15] For these

---

[10] Going forward, the parties are expected to engage in more meaningful communications so as to promptly address disputes.

[11] (Ex. B to Mot., Pl.'s First Set of Disc. Reqs. 3, Doc. No. 74-2.)

[12] (Ms. Thomas' Suppl. Statement of Disc. Issues and Mot. to Compel Disc. of Def. ("Suppl. Br.") 3, Doc. No. 78.)

[13] (*Id.*)

[14] (Opp'n 3–4, Doc. No. 81.)

[15] Rule 33(d) provides:

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information) . . . the responding party may answer by: (1)

3

reasons, the motion is granted as to Interrogatory 1. Consistent with Rule 33, WSU is ordered to supplement its response to identify which documents are responsive to Interrogatory 1 and, if the interrogatory cannot be fully answered by reference to business records, WSU must also supplement its written response.

### RFPs 1, 2, and 4

The parties made nearly identical arguments with respect to RFPs 1, 2, and 4. Accordingly, these disputes are addressed together.

RFP 1 requests:

> All documents, field notes, correspondence/communications, emails, voicemails, witnesses' statements, recordings, transcripts, information requests, requests for interviews, responses, including attempts to reach a party and any other communications related to the Plaintiff's Title IX investigation including information to and from and involving investigators Ashley Leonard, Morris Haggerty and Madonne Miner, the Provost's office, to and from all parties involved, witnesses and potential witnesses including Brad Mortenson, Ms. Abel, Ms. Knapp, and other victims or potential victims investigated from conduct of Doctor Baird as well as all communications between the Provost's Office officials (Madonne Miner, Eric Amsel and Brenda Kowalewski) and the University's Legal Department (as investigators), the University's Police Department, correspondence with the Weber State Police Department, the Department of Occupational Licensing and/or any other department since WSU became aware of allegations against Professor Baird and throughout the Title IX investigation.[16]

---

specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could.

Fed. R. Civ. P. 33(d).

[16] (Ex. B to Mot., Pl.'s First Set of Disc. Reqs. 3, Doc. No. 74-2.)

RFP 2 requests:

> All documents regarding Ms. Thomas and her complaints regarding Prof. Baird, including any early correspondence to or from Ms. Abel, Jeff Hurst, Ms. Knapp, Professor Baird, Eric Amsel, Aaron Ashley or other supervisors and with others from as early as 2013, as well as any other complaints raised from other individuals on behalf of Plaintiff.[17]

RFP 4 requests:

> All documents, including but not limited to transcripts, minutes, raw recordings and evidence produced for the January 2020 faculty review board hearing as well as University correspondence prior to and after the faculty review board hearing.[18]

Ms. Thomas claims WSU has not produced all responsive documents, such as field notes, early correspondence, voicemails, correspondence from specific individuals, etc.[19] Ms. Thomas argues the requested documents are relevant to proving certain elements of her claim, such as WSU's knowledge—an argument she expounded on at the hearing. WSU objects to these RFPs, arguing the requested documents are irrelevant in light of the court's January 5, 2020 order on WSU's motion to dismiss.[20] In this order, the court concluded Ms. Thomas failed to state a cognizable deliberate indifference claim related to how WSU investigated her allegations or punished Dr. Baird.[21] WSU also contends "the only relevance [these] documents have are the

---

[17] (*Id.*)

[18] (*Id.* at 4.)

[19] (*See* Suppl. Br. 5, Doc. No 78.)

[20] (Opp'n 6, Doc. No. 81.)

[21] (*See* Order and Mem. Decision 10–11, Doc. No 18.) The court found other allegations were sufficient to support a cognizable deliberate indifference claim. (*See id.*)

facts they contain regarding other complaints against Dr. Baird. Those facts are detailed in WSU's final Title IX report, WSU's supplemental report, and the drafts of those reports."[22]

The standard governing discovery is relevance.[23] Relevance in the discovery context is "to be construed broadly to encompass any matter that bears on, or that reasonably could bear on any party's claim or defense."[24] To support her Title IX claim, Ms. Thomas must show WSU (1) had actual knowledge[25] of and (2) was deliberately indifferent[26] to (3) harassment so severe, pervasive, and objectively offensive that it (4) deprived her of the educational benefits and opportunities provided by the school.[27]

WSU's argument that the requested documents are irrelevant is unpersuasive because the ruling on the motion to dismiss is not so far reaching as to prohibit discovery related to the Title

---

[22] (Opp'n 6, Doc. No. 81.)

[23] *See* Fed. R. Civ. P. 26(b)(1).

[24] *Allegis Inv. Servs. v. Arthur J. Gallagher & Co.*, No. 2:17-cv-00515, 2018 U.S. Dist. LEXIS 243885, at *6 (D. Utah May 25, 2018) (unpublished).

[25] The actual knowledge prong may be satisfied if other students' earlier complaints about a university employee put the university on notice that the employee posed a substantial risk of abuse. These earlier instances of harassment need not be clearly credible. (*See Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006).

[26] A university is deliberately indifferent to acts of harassment when its "response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). A response is unreasonable when it, "at a minimum, cause[s] [students] to undergo harassment or make them liable or vulnerable to it." *Id.* at 645 (internal quotation marks omitted). But the deliberate indifference element does not require university administrators to "engage in particular disciplinary action, and [v]ictims do not have a right seek particular remedial demands." *Escue*, 450 F.3d at 1155 (internal quotation marks omitted) (citations omitted) (alteration in original).

[27] *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1246 (10th Cir. 1999).

IX investigation. This information is relevant to WSU's actual knowledge—whether it was on notice of the risk Dr. Baird posed. It is also relevant to whether WSU acted with deliberate indifference in failing to act after first learning of Dr. Baird's inappropriate behavior toward Ms. Thomas. Indeed, at the hearing, WSU conceded the requested information would be relevant to proving actual knowledge. Because relevance is to be broadly construed and the requested documents could reasonably bear on elements of Ms. Thomas's claim, WSU is ordered to produce the full range of documents requested in RFPs 1, 2, and 4. The fact that WSU believes the same essential factual information is contained in reports it already produced (the Title IX report, WSU's supplemental report, and drafts of those reports) does not relieve WSU of its obligation to produce the underlying documents requested.

      However, Ms. Thomas's motion is denied with respect to RFP 4 to the extent her motion specifically seeks to compel production of a settlement agreement between Dr. Baird and WSU.[28] Rule 34 of the Federal Rules of Civil Procedure requires a request for production to "describe with reasonable particularity each item or category of items to be inspected."[29] RFP 4 does not mention a settlement agreement, and the request does not appear to contemplate it. Accordingly, WSU is not required to produce any settlement agreement, independent of its obligation to produce "correspondence *prior to and after* the faculty review board hearing."[30] In other words, to the extent documents related to a settlement agreement with Dr. Baird are

---

[28] (*See* Suppl. Br. 7, Doc. No. 78.)

[29] Fed. R. Civ. P. 34(b)(1)(A).

[30] (Ex. B to Mot., Pl.'s First Set of Disc. Reqs. 4, Doc. No. 74-2 (emphasis added).)

encompassed in the correspondence requested in RFP 4, they must be produced. But WSU need not separately produce them (if they are not part of the correspondence referenced in RFP 4).

**RFP 5:**

RFP 5 requests:

> All documents regarding complaints and or investigations on complaints, formal or informal and the outcome and disciplinary record made about Doctor Baird, internally or externally, involving allegations of sexual harassment, or romantic relationships involving other students, employees or third-parties including complaints from the Weber State Counseling center, the STAR team, Human Resources, the EEO office, from supervisors, Ms. Abel or other colleagues, the department of professional licensing, the Weber County police department, including the complaints mentioned from third-party individuals identified in the amended complaint.[31]

Ms. Thomas contends WSU limited its response to this RFP to formal complaints,[32] pointing to documents she believes WSU should have produced.[33] WSU argues Ms. Thomas's request is too broad, as it "appears to encompass any negative comment made about Dr. Baird from anyone in any forum from 2004–2022."[34] WSU asserts it has engaged in extensive efforts to discover and produce documents responsive to this request and Ms. Thomas is only speculating that additional responsive complaints exist.[35] Further, WSU contends complaints filed against Dr. Baird with third-party entities, such as the Department of Occupational

---

[31] (*Id.*)

[32] (Suppl. Br. 7, Doc. No. 78.)

[33] (*Id.* at 7–8.)

[34] (Opp'n 6, Doc. No. 81.)

[35] (*Id.* at 3–4.)

Licensing and Ogden Police Department, are not WSU's records and are equally available to Ms. Thomas.[36]

As to RFP 5, Ms. Thomas's motion is granted in part and denied in part. WSU is ordered to produce all responsive documents it possesses or controls related to all formal or informal complaints and investigations against Dr. Baird and their outcome—including those of third-party entities. But WSU cannot be compelled to produce what it does not possess or control. In addition to supplementing its production, WSU must also supplement its response by identifying which responsive documents it has already produced, consistent with Rule 34."[37]

**RFP 6:**

RFP 6 requests:

All documents related to any investigation and disciplinary action made toward Doctor Baird during his tenure with Weber State University including the investigation opened by Ann Millner against Professor Baird[] in 2012 conducted by the U.S. Department of Education and managed by Ryan Thomas and the allegations received from Brandon DeHope and Mr. DeHope['s] subsequent allegations of abuse by Professor Baird during December 2012 and 2013.[38]

Ms. Thomas asserts Dr. Baird's disciplinary record has not been produced in its entirety; missing is his employment file as a professor and his employment record with the counseling center and human resources.[39] Specifically, Ms. Thomas identifies a 2012 investigation which

---

[36] (*Id.* at 5.)

[37] *See* Fed. R. Civ. P. 34(b)(2)(E)(i) ("A party must produce documents as they are kept in the usual courts of business or must organize and label them to correspond to the categories in the request.").

[38] (Ex. B to Mot., Pl.'s First Set of Disc. Reqs. 4, Doc. No. 74-2.)

[39] (Suppl. Br. 8, Doc. No. 78.)

has not been produced.[40] WSU contends this 2012 investigation—a U.S. Department of Education report—is irrelevant because it relates exclusively to Dr. Baird's research. Accordingly, WSU asserts it is unrelated to his private therapy sessions or his teaching role at WSU.[41] Further, WSU contends any communication between Brandon DeHope and WSU is irrelevant because Mr. DeHope was never a WSU student. Lastly, WSU renews its objection regarding documents related to the Title IX investigation, and asserts all relevant documents are already in Ms. Thomas's possession.[42]

The requested documents are relevant. The 2012 Department of Education report and communications with Mr. DeHope could inform whether WSU was on notice of the risks Dr. Baird posed, bearing on the "actual knowledge" element of Ms. Thomas's claim. Therefore, the motion is granted as to RFP 6 and WSU is ordered to produce the full range of documents requested in the RFP.

**RFPs 3 and 8**

The parties made nearly identical arguments with respect to RFPs 3 and 8. Accordingly, these disputes are addressed together.

RFP 3 requests "[a]ll documents and correspondence/communications between the Women's Center and any other University department—including, but not limited to the Legal Department, the Police Department including its police, the Signpost's personnel, and any other

---

[40] (*Id.*)

[41] (Ex. C to Mot., Def.'s Resps. to Pl.'s First Set of Disc. Reqs. 7, Doc. No. 74-3.)

[42] (*Id.*)

parties regarding the Plaintiff, the Title IX investigation and/or the Faculty Board of Review hearing."[43] And RFP 8 requests "Plaintiff's complete counseling and mental health records, including the notes from the staffing of her case between the counselors at the Counseling Center and their director, Ms. Abel."[44]

WSU contends the information Ms. Thomas seeks is controlled by Utah privacy laws and is, therefore, protected from disclosure.[45] WSU seeks written, informed consent from Ms. Thomas with respect to RFP 3 and a subpoena or court order with respect to RFP 8.[46] Ms. Thomas argues WSU is permitted to release the requested records pursuant to the modified protective order governing this case.[47] Both of the privacy statutes WSU cites carve out exceptions for producing protected records pursuant to a court order.[48] There is no dispute as to the relevance of these documents. Accordingly, Ms. Thomas's motion is granted as to RFPs 3 and 8 and WSU is ordered to produce the protected records.

**RFP 7**

RFP 7 requests:

---

[43] (Ex. B to Mot., Pl.'s First Set of Disc. Reqs. 4, Doc. No. 74-2.)

[44] (*Id.* at 5.)

[45] (*See* Opp'n 7–8, Doc. No. 81.) WSU cited Utah Code Ann. § 53B-28-202 with respect to RFP 3 and § 63G-2-304 with respect to RFP 8.

[46] (Opp'n 7–8, Doc. No. 81.)

[47] (*See* Modified Protective Order, Doc. No. 57.)

[48] *See* Utah Code Ann. § 53B-28-202(2)(d) (stating disclosure is permitted if "a court of competent jurisdiction orders the disclosure"); § 63G-2-304 (establishing "medical, psychiatric, or psychological data about an individual" as a controlled record); § 63G-2-202(7) (providing the "court order" exception relevant to § 63G-2-304).

> All of Plaintiff's student records stored in any University system (Canvas, Cattracks, Counseling Center Portal or any other portal/medium) and their associated audit records and access logs including, but not limited to, user, IP address, timestamp, creations, modifications, deletions and views, including all emails and class assignments to and from Doctor Baird.[49]

Ms. Thomas claims Dr. Baird retaliated against her by using her student records against her in part of the Title IX investigation.[50] Because of this, Ms. Thomas contends she needs to know when Dr. Baird accessed her student records.[51] Despite arguing this information is irrelevant, WSU represents it has already produced Ms. Thomas's student records, including records of degree progress, academic transcripts, Canvas communications between Ms. Thomas and Dr. Baird, every email sent to Ms. Thomas's WSU account, and all Ms. Thomas's assignments submitted through Canvas.[52] WSU argues it would be unduly burdensome to provide the remaining records because it would require searches of audit records, access logs, IP addresses, timestamps, creations, modifications, deletions, views, and all of Dr. Baird's emails across all WSU systems, requiring extensive IT resources from WSU's vendor and resulting in vast amounts of data.[53]

While the scope of discovery is broad, it is not without limitation. Discovery must not only be relevant to a party's claim or defense, but must be proportional to the needs of the case.[54]

---

[49] (Ex. B to Mot., Pl.'s First Set of Disc. Reqs. 4, Doc. No. 74-2.)

[50] (Suppl. Br. 9, Doc. No. 78.)

[51] (*Id.*)

[52] (Opp'n 7, Doc. No. 81.)

[53] (*Id.*)

[54] Fed. R. Civ. P. 26(b)(1).

Specifically, "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost."[55]

For example, in *Glenn v. Moss*,[56] the court determined the requested information would present an undue burden because it required searching years of data and would result in a minimum of 37,000 pages.[57] The court found "the undue burden . . . in producing the documents requested . . . far outweighs the likely benefit of the materials to Plaintiff's case."[58] Likewise, given the amount of data likely to be produced, the fact that WSU has already produced much of what was requested by RFP 7—and considering that retaliation is not an element of Ms. Thomas's claim[59]—the burden of producing the remaining documents far outweighs the likely benefit of the materials to Ms. Thomas's case. For these reasons, the motion is denied as to RFP 7.

---

[55] Fed. R. Civ. P. 26(b)(2)(B).

[56] No. 2:15-cv-165, 2015 U.S. Dist. LEXIS 201422 (D. Utah Nov. 2, 2015) (unpublished).

[57] *Id.* at *5–6.

[58] *Id.* at *5.

[59] *See Murrell*, 186 F.3d at 1246 (providing the elements of a Title IX claim as (1) actual knowledge; (2) deliberate indifference; (3) harassment that was severe, pervasive, and objectively offensive; and (4) deprivation of educational benefits and opportunities provided by the school).

**Attorneys' Fees**

Ms. Thomas requests an award of reasonable attorneys' fees and costs resulting from this motion.[60] Because the motion is granted in part and denied in part, Ms. Thomas is not awarded fees. Consistent with Rule 37, each party is apportioned its own fees and costs.[61]

CONCLUSION

Ms. Thomas's discovery motion[62] is granted in part and denied in part. As it relates to Interrogatory 1 and RFPs 1, 2, 3, 6, and 8, the motion is GRANTED. The motion is GRANTED in part and DENIED in part as to RFPs 4 and 5. The motion is DENIED as to RFP 7. The court ORDERS as follows:

1. WSU must supplement its response to Interrogatory 1 to identify which documents are responsive. If the interrogatory cannot be fully answered by reference to business records, WSU must also supplement its written response.

2. WSU must produce all documents responsive to RFPs 1, 2, and 6, including documents related to both formal and informal complaints.

3. WSU must produce all documents responsive to RFP 4, including documents related to both formal and informal complaints, consistent with the limitation regarding settlement agreement documents described above.

---

[60] (*See* Mot. 1, Doc. No. 74.)

[61] *See* Fed. R. Civ. P. 37(a)(5)(C) ("If the motion is granted in part and denied in part, the court . . . may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion.").

[62] (Doc. No. 74.)

4. WSU must produce all documents in its possession or control responsive to RFP 5, including formal or informal complaints or investigations against Dr. Baird and their outcome. WSU must also supplement its previous response by identifying which previously produced documents are responsive to RFP 5.

5. WSU must produce the protected records responsive to RFPs 3 and 8.

DATED this 16th day of November, 2022.

BY THE COURT:

*Daphne A. Oberg*
Daphne A. Oberg
United States Magistrate Judge